Richardson vs. Ames.

RICHARDSON, Appellant, vs. AMES, Respondent.

*February 26 — March 17, 1891.*

*Partnership: Ratification of unauthorized contract.*

*L. G.*, one of a company consisting of himself, R. and N., sold a new buggy to A. and took from him an old one in part payment, and agreed that the balance of the price should apply on his private debt to A., and the company received and retained the old buggy; and subsequently A., not being satisfied with his purchase, returned

the new buggy to *R.*, informing him of the arrangement with *L. G.*, and *R.*, making no objection thereto, exchanged the buggy. Afterward *N.* sold out all his interest in the firm to *R. Held*, that the act of *L. G.* was ratified by *R.*, and that, after such transfer by N., his assent thereto was not material nor necessary to make it binding upon the firm or its assignee.

APPEAL from the Circuit Court for *Rock* County.

Plaintiff sues as assignee of Empire Cross Spring Company on an account of that company against the defendant. The account is as follows:

1886.

| | | |
|---|---|---:|
| May 22. | To painting and varnishing carriage | $5 00 |
| Aug. 28. | " one St. Julien buggy | 110 00 |
| Sept. 21. | " repairs on wheel | 75 |
| | | $115 75 |

*Cr.*

| | |
|---|---:|
| Aug. 28. By old buggy | 30 00 |
| Balance | $85 75 |

When the account accrued the Empire Cross Spring Company was a partnership, the partners being J. B. La Grange, Sutton Norris, and John W. Richardson. They continued such partners until September 24, 1886, when Norris sold his interest in the firm property and business to his partner, Richardson. December 28, 1886, La Grange and J. W. Richardson sold a one-third interest in the firm property and business to one Collman. In the spring of 1887 all the firm property, including the account in suit, was sold and transferred to the plaintiff, *Alexander Richardson.*

This action was brought in justice's court, and the plaintiff recovered. The defendant appealed to the circuit court, and a trial in that court resulted in a verdict and judgment for defendant. A motion by plaintiff for a new trial was denied. The case is further stated in the opinion. Plaintiff appeals from the judgment.

For the appellant there was a brief by *Doe & Sutherland*, and oral argument by *J. B. Doe*. To the point that one partner cannot apply the partnership funds or property to the satisfaction of his private debt, they cited *Vilas v. Bangs*, 36 Wis. 131; *Cotzhausen v. Judd*, 43 id. 213; *Thomas v. Stetson*, 62 Iowa, 537; *Janney v. Springer*, 78 id. 617; *Gram v. Cadwell*, 5 Cow. 489; 3 Kent's Com. 41 *et seq.;* Story on Part. 5th ed. p. 230; *Brooks v. Sullivan*, 32 Wis. 444; *Welles v. March*, 30 N. Y. 344; *Steinhart v. Fyhrie*, 5 Mont. 463; *Rogers v. Batchelor*, 12 Pet. 221; *Farrar v. Hutchinson*, 9 Adolph. & E. 641; Bates on Part. 435; *Bird v. Fake*, 1 Pin. 290; *Williams v. Brinkall*, 13 Gray, 462.

. For the respondent there was a brief by *Fethers, Jeffris & Fifield*, and oral argument by *M. G. Jeffris*.

Lyon, J. The testimony tends to prove that the charge of $5 for painting and varnishing carriage was paid by defendant to an employee of the Empire Cross Spring Company, who was authorized to receive such payment. It also tends to prove that the repairs on wheel charged at seventy-five cents were made by La Grange, who was under contract obligation to make such repairs, and who received the wheel for that purpose, and that defendant did not employ the company to do the work. The verdict of the jury effectually disposes of these two items, and no further reference will be made to them.

The transactions relating to the charge of $110 for one St. Julien buggy are briefly these: In May, 1886, defendant loaned the partner La Grange $100, and took his due-bill therefor. Some weeks later La Grange turned out a buggy to defendant, belonging to the company or firm, at the agreed price of $110, and received from defendant in part payment therefor an old buggy at $30, and agreed with defendant that the balance of $80 should apply on his due-bill. The firm received and retained the old buggy.

The buggy thus delivered to the defendant was unsatisfactory, and the partner Richardson took it back, and furnished the defendant another, which he retained. The testimony tends to show that, at the time Richardson took back the buggy, defendant informed him of his arrangement with La Grange to apply the balance of $80 on the due-bill, and that he (Richardson) made no objection to the arrangement, and afterwards delivered the other buggy. The testimony was disputed, but the jury must have found it to be true.

Of course, La Grange had no authority, without the consent of his copartners, to turn out the property of the firm to pay his individual debt. The question is, therefore, Do the facts above stated show such consent, and thus bind the company to the arrangement between La Grange and defendant? As already observed, the jury must have found that the partner Richardson, after having been informed of the arrangement, made no objection thereto, but exchanged the buggy which La Grange had thus sold for another buggy, and made no offer to return the old buggy to defendant. This must be deemed a ratification on the part of Richardson of the arrangement between La Grange and the defendant. Had the partner Norris also consented thereto, there could be no doubt that the firm adopted and ratified the act of La Grange. But there is no proof that Norris consented thereto. The learned circuit judge refused to instruct the jury, as requested by plaintiff, that if Norris did not so consent the plaintiff must recover. There being no testimony that Norris consented, the giving of such instruction would have been equivalent to directing a verdict for plaintiff. The effect of the instructions on that subject which were given to the jury was that the consent of Norris was not essential to render the contract between La Grange and defendant binding upon the company or firm. Norris sold his interest in the firm property and business to his partner Richardson in September, 1886, and retired from

Richardson vs. Ames.

the firm. We are of the opinion that his non-consent ceased to be material after that time, and that as soon as the firm consisted only of La Grange and Richardson it became fully bound by the contract between La Grange and the defendant thus ratified by Richardson. In substance and legal effect, it is like a case in which A., B., and C. are joint owners of property which neither has authority to sell without consent of the others. A. sells the property without such consent to one who knows he has no authority to do so. B. afterwards ratifies and confirms the sale, and then C. sells his interest in the joint property to B. In such case it cannot be doubted that the purchaser takes a valid title to the property from the time C. disposes of his interest. So here, the only parties who can now be heard to question the transaction with La Grange have consented thereto. Neither Collman, who subsequently came into the firm, nor the plaintiff, who is the assignee of the firm, stands in any better position than La Grange and J. W. Richardson to question the validity of the transaction.

There was some discrepancy in the testimony as to certain dates, and the court suggested to the jury a method by which the testimony might be reconciled. The discrepancy had little or no bearing on the merits of the case, and the suggestion of the court, whether justifiable or not, could not possibly have injured the plaintiff. The instructions given the jury accord with the views above expressed, and seem to be justified by the testimony. We do not find therein, nor in any of the rulings on the trial, any sufficient ground for reversing the judgment.

*By the Court.*— Judgment affirmed.